Erica J. Van Loon (#227712)
erica.vanloon@armondwilson.com
**ARMOND WILSON LLP**
2029 Century Park East, Ste 400N
Los Angeles, CA 90067
Telephone: (310) 882-6195

Jacqueline M. Lesser (admitted *pro hac vice*)
Jacqueline.Lesser@icemiller.com
**ICE MILLER LLP**
1735 Market Street, Suite 3900
Philadelphia, PA 19103
Telephone: (215) 982-5165

Justin Swindells (admitted *pro hac vice*)
Justin.Swindells@icemiller.com
Jin Lee (#364574)
Jin.Lee@icemiller.com
**ICE MILLER LLP**
200 West Madison Street, Suite 3500
Chicago, IL 60606
Telephone: (312) 726-7133

*Attorneys for Defendant, Lyrical Media LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LYRICAL CORP. II, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LYRICAL MEDIA LLC,<br><br>Defendant. | CASE NO.: 2:26-cv-04949 SPG (SSCx)<br><br>**DEFENDANT LYRICAL MEDIA LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11**<br><br>Date: August 12, 2026<br>Time: 1:30 p.m.<br>Crtrm: 5C<br><br>Honorable Sherilyn Peace Garnett |

## TABLE OF CONTENTS


I. BACKGROUND FACTS ....... 2

A. Lyrical Media's Trademark Registration ....... 2

B. The Instant Litigation ....... 4

II. LEGAL STANDARD ....... 5

III. ARGUMENT ....... 6

A. LC II's Complaint Presents Frivolous and Objectively Unreasonable Claims. ....... 6

B. LC II's Complaint Was Brought with An Improper Purpose. ....... 11

IV. CONCLUSION ....... 12

## TABLE OF AUTHORITIES

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) .......... 7

*Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533 (1991) .......... 5, 6

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) .......... 5, 6

*Collins v. U.S. Dep't of Veterans Affairs*, 497 F. Supp. 3d 885 (S.D. Cal. 2020) .......... 7, 9

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) .......... 6

*Lake v. Gates*, 130 F.4th 1064 (9th Cir. 2025) .......... 11

*M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073 (9th Cir. 2005) .......... 10

*Mogan v. Sacks, Ricketts & Case LLP*, No. 21-cv-08431-TSH, 2022 WL 119212 (N.D. Cal. Jan. 12, 2022) .......... 5

*Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042 (N.D. Cal. 2012) .......... 7

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990) .......... 6

*Yarbrough v. San Bernardino County*, No. EDCV 24-0319-KK-DTBx, 2024 WL 2401843 (C.D. Cal. May 23, 2024) .......... 11

## OTHER AUTHORITIES

Fed. R. Civ. P. 11 .......... 1, 5, 6, 11, 12

Defendant Lyrical Media LLC ("Lyrical Media"), by and through its counsel Ice Miller LLP, respectfully moves this Court to impose sanctions pursuant to Federal Rule of Civil Procedure 11 against David A. Belcher and James J. Saul at Faegre Drinker Biddle & Reath LLP, counsel for Plaintiff Lyrical Corp. II, LLC ("LC II" or "Plaintiff").

LC II's Complaint, signed and filed by its counsel at Faegre Drinker Biddle & Reath LLP ("Faegre Drinker"), exhibits conduct that is sanctionable under Rule 11. Despite previously acknowledging a lack of any legitimate dispute over Lyrical Media's core entertainment and production services, and only disputing Lyrical Media's existing registration to the extent that registration covered services in Class 36 that blocked LC II's ability to re-register its LYRICAL mark for investment advisory services, and Lyrical Media's subsequent agreement to delete, and the deletion of those Class 36 services, from Lyrical Media's trademark registration to accommodate LC II, LC II and its counsel filed a sweeping infringement action targeting Lyrical Media's services and seeking cancellation of its entire registration as well as money damages and a permanent injunction against Lyrical Media's mark and corporate name, which Lyrical Media has used since 2022. LC II's claims lack any factual or legal basis: A claim for trademark infringement requires that a plaintiff plead ownership of prior rights in a trademark for particular goods and services, which is violated by a second comer's use of a confusingly similar mark on related goods and services, sold or marketed in the same trading channels to the same consumers. The Complaint does not allege any prior rights of LC II which would raise a claim for trademark infringement under the Lanham Act. LC II's claim of ownership of rights in LYRICAL is only for "investment management services; investment advisory services." LC II has not alleged any trademark use of LYRICAL beyond those services by itself, or its alleged licensees. Moreover, the Complaint is completely silent on highly relevant facts, namely, Faegre Drinker's

representations made during the parties' prior dealings. In advancing its frivolous claims, LC II only relies on conclusory allegations that cannot survive even cursory scrutiny while deliberately omitting facts that directly contradict its claims, thereby misleading this Court. The result is a pleading that is not only objectively unreasonable but filed for an improper purpose apparently designed to expand leverage and impose litigation costs.

## I. BACKGROUND FACTS

### A. Lyrical Media's Trademark Registration

Lyrical Media is a media production company operating across platforms including film, television, podcasts, video games, and graphic novels.[1] (Dkt. 1, ¶ 16; Declaration of Jon Rosenberg ("Rosenberg Decl."), ¶ 2.) Lyrical Media owns the registered trademark LYRICAL MEDIA®, U.S. Reg. No. 7,170,817 (the "'817 Registration"). (Rosenberg Decl. ¶ 3; Declaration of Jacqueline M. Lesser ("Lesser Decl.", Ex. 1.) It has been in business since 2022. (Rosenberg Decl. ¶ 2.) The LYRICAL MEDIA mark issued to registration on September 19, 2023 for: Class 36 for "[p]roject financing for developing and producing film, television, video game, podcast and graphic novel content; investment services, namely, asset acquisition, consultation, development and management services"; Class 41 for "[c]reating and developing concepts for television programs; production of podcasts; film production; [p]roduction of video game software; publication of graphic novels"; and Class 42 for "[v]ideo game development services." (Lesser Decl. Ex. 1.) Lyrical Media has used its mark since at least August 2022. (*Id.*)

In 2017, LC II's original trademark registration for LYRICAL, Reg. No. 3,107,200 covering "investment and financial management and advisory services" was cancelled for failure to file mandatory papers to renew the registration. (Lesser Decl. Ex. 2.) Several years later, on March 2, 2022, LC II filed a new application

[1] Lyrical Media (June 2, 2026), https://lyricalmedia.com/.

for the identical services in the United States Patent and Trademark Office (the "Trademark Office"). (Lesser Decl. Ex. 3.) In December 2022, LC II received notification from the Trademark Office that its pending application was blocked by Lyrical Media's then prior- pending trademark application for LYRICAL MEDIA mark. (Lesser Decl. Ex. 4.) LC II received notice of the issuance of Lyrical Media's registration on February 26, 2024. (Lesser Decl. Ex. 5.) Five months later, on July 22, 2024, LC II's in-house counsel, Jeff Moses, and one of its officers, Craig Lipshultz, contacted Lyrical Media directly to attempt to work out a coexistence agreement. (Rosenberg Decl. ¶ 4.) And, on July 25, 2024, Faegre Drinker, trademark counsel for LC II, contacted Lyrical Media's trademark counsel to work out a deal. (*Id.* ¶ 5.) Faegre Drinker indicated that LC II's application for LYRICAL was denied based on one class of Lyrical Media's '817 Registration. (Rosenberg Decl. Ex. 1.) Counsel requested that "all Class 36 services be deleted from the '817 registration" but specifically represented that "the Class 41 and 42 identifications can remain as they are." (*Id.*)

While the parties were considering and negotiating the requested deletion of the Class 36 identification, LC II was required to respond to the Office Action in the Trademark Office that issued against it, and to suspend prosecution, Faegre Drinker filed a petition with the Trademark Trial and Appeal Board of the Trademark Office (the "TTAB") seeking cancellation of the Class 36 services from the '817 Registration (the "Petition for Partial Cancellation"). (Dkt. 1, ¶ 19.) Then, consistent with Trademark Office procedure, Faegre Drinker requested suspension of further prosecution on LC II's trademark application because of the pending Petition for Partial Cancellation. (Lesser Decl. Ex. 6.) With the Petition for Partial Cancellation pending, Faegre Drinker sent another correspondence to Lyrical Media, again requesting deletion of the Class 36 services that blocked its pending application for LYRICAL. (Rosenberg Decl. Ex. 2.)

Rather than engaging in a protracted Cancellation action to cancel a single class of its issued registration for LYRICAL MEDIA®, Lyrical Media agreed to delete the Class 36 services from the '817 Registration on October 14, 2024, effectively removing the only obstacle to LC II's trademark application. LC II's registration of the LYRICAL mark for Class 36 was issued in August 2025. (Dkt. 1, Ex. A.)

**B. The Instant Litigation**

After dismissal of the Petition for Partial Cancellation on consent judgment and LC II's successful registration of its LYRICAL mark, LC II changed tack. With its registration in hand, it now objected entirely to Lyrical Media's use of LYRICAL MEDIA®, despite the four years of coexistence without any known confusion, under the theory that given "Lyrical Media's willingness to abandon with prejudice the Class 36 services," it should be willing to affirmatively cancel its registration and cease use of the LYRICAL MEDIA® mark it established four years earlier, without objection. (Rosenberg Decl. Ex. 3.) Because Lyrical Media would not abandon the mark it had registered and used for four years, LC II filed this action alleging willful infringement of its later issued federally registered mark, and on grounds of false designation of origin and unfair competition, common law trademark infringement, unfair competition. LC II seeks money damages and injunctive relief as well as cancellation of the '817 Registration. (Dkt. 1.)

In the Complaint, LC II ignores that Lyrical Media holds an earlier registration for and the only registration for services in Classes 41 and 42, and avers that this action arises out of "Lyrical Media's unauthorized use of [LC II]'s federally registered LYRICAL trademark in connection with identical and/or closely related services." (*Id.* ¶ 1.) Pointedly, LC II does not allege that it has used a LYRICAL trademark on the services claimed by Lyrical Media, prior to Lyrical Media's adoption. Instead, in conflict with its earlier actions, LC II alleges that Lyrical Media

continued to provide project financing and investment services (*id.* ¶ 21) and that Lyrical Media's development and production services are "closely related to and intertwined with the financial services" (*id.* ¶ 26). In addition, LC II alleges that LC II and Lyrical Media target "the same types of consumers through the same or overlapping channels of trade." (*Id.* ¶¶ 29-30.)

At bottom, LC II has deliberately omitted that but for Lyrical Media's voluntary deletion of Class 36 from the LYRICAL MEDIA registration, LC II's application for LYRICAL would not have proceeded to registration. LC II is now using this later registration – that issued only because of Lyrical Media's voluntary action – to attack Lyrical Media.

## II. LEGAL STANDARD

As the Ninth Circuit put it, "[f]iling a complaint in federal court is no trifling undertaking." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Rule 11 imposes upon attorneys a duty to certify that they have read any pleadings or motions they file with the court and that such pleadings or motions are "well-grounded in fact, have a colorable basis in law, and are not filed for an improper purpose." *Mogan v. Sacks, Ricketts & Case LLP*, No. 21-cv-08431-TSH, 2022 WL 119212, at *1 (N.D. Cal. Jan. 12, 2022) (citing *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 542 (1991)). Rule 11 empowers the Court to "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). An attorney is subject to Rule 11 sanctions, among other reasons, when he presents to the court claims, defenses, and other legal contentions not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, or when he presents them "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1), (2).

When, as here, a complaint is the primary focus of Rule 11 proceedings, a district court conducts a two-prong inquiry "to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting *Christian*, 286 F.3d at 1127). The word "frivolous" is used as a shorthand for this test "to denote a filing that is both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded. *Holgate*, 425 F.3d at 677.

Although the "improper purpose" and "frivolousness" inquiries are separate and distinct grounds for sanctions under Rule 11, "they will often overlap since evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose." *Townsend*, 929 F.2d at 1362. "A district court confronted with solid evidence of a pleading's frivolousness may in circumstances that warrant it infer that it was filed for an improper purpose." *Id.* at 1365.

## III. ARGUMENT

### A. LC II's Complaint Presents Frivolous and Objectively Unreasonable Claims.

In signing and filing a complaint, an attorney "certifies to the court that [he] has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both." *Bus. Guides*, 498 U.S. at 542. It is clear that the Complaint has no basis in fact or in law, and Faegre Drinker's certification that the Complaint is well-founded is a violation of Rule 11. LC II. The same counsel who has lodged claims against Lyrical Media on a theory that Lyrical Media's services are "closely related, if not identical to" LC II's services

has previously stated that his client was unconcerned with those identical services. (*See* Dkt. 1, ¶¶ 1, 26-28.) The "relatedness of the services" is one of the eight *Sleekcraft* factors considered by courts in the Ninth Circuit to guide the likelihood of confusion analysis. *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1053 (N.D. Cal. 2012) ("The central issue in a trademark action is whether consumers 'are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques.'"). To determine relatedness, "courts look to whether the services (1) are 'complementary,' (2) share the 'same class' of consumers, and (3) 'are similar in use and function.'" *Collins v. U.S. Dep't of Veterans Affairs*, 497 F. Supp. 3d 885, 897-98 (S.D. Cal. 2020). There can be no consumer confusion "[e]ven where there is precise identity of a complainant's and an alleged infringer's mark . . . if the alleged infringer is in a different geographic area or in a wholly different industry." *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

The Complaint alleges the distinct services offered by LC II and Lyrical Media. In its own words, LC II is a "trademark licensor" who licenses its trademark LYRICAL to affiliated entities which "invest[] in and manage[] traditional equity, real estate, private equity, venture capital, and hedge funds." (Dkt. 1, ¶¶ 7-8.) In addition, LC II alleges that its affiliated companies (which are not identified by name) and authorized licensees have invested in various sectors, including media and entertainment industry. (*Id.* ¶ 11.) LC II's registration of its LYRICAL mark in International Class 36 covers investment management and investment advisory services only. (*Id.* Ex. A.) Despite only claiming rights as a holding company that licenses the LYRICAL trademark, LC II has not identified any authorized licensees with an interest in this trademark infringement proceeding, as required in its Local Rule 7.1-1 submission to this Court.

On the other hand, the Complaint explicitly alleges that Lyrical Media is a "cross-platform media financier and production company operating across film, television, interactive, podcasts, and graphic novels." (Dkt. 1, ¶ 16.) Lyrical Media's '817 Registration is registered for the following services: "Creating and developing concepts for television programs; production of podcasts; film production; Production of video game software; publication of graphic novels" (Class 41), and "Video game development services" (Class 42). (Lesser Decl. Ex. 1.) Moreover, if LC II had initially demanded that Lyrical Media stop conducting business under LYRICAL MEDIA® and cancel its registration in its entirety, Lyrical Media would not have voluntarily agreed to delete Class 36 from its registration and would have rigorously defended its trademark registration rights, and LC II's application would have not issued to registration in 2025. These allegations are inconsistent with LC II's position in negotiating the deletion of Lyrical Media's Class 36 services from its prior registration, and thus demonstrate that either LC II previously negotiated in bad faith, or that the services offered by LC II and Lyrical Media are distinct and unrelated, thus eliminating any cognizable allegation of infringement.

In an attempt to justify its groundless assertion that Lyrical Media's services are "closely related, if not identical to" LC II's services, LC II lists several instances where its services (or its mostly unidentified affiliates' services) remotely involved media and entertainment industry, activities that occurred at one time over 20 years ago, and another time 8 years ago, well beyond the three-year presumptive period of abandonment for trademark use. (Dkt. 1, ¶ 11.) Notably, LC II does not allege the basis of what it unsuccessfully attempts to allege as licensed common-law trademark rights. It does not allege any trademark use of LYRICAL by LC II or an authorized licensee for similar services as offered by Lyrical Media. This only shows that LC II's claims are groundless and internally inconsistent with LC II's sole allegation of the basis of its trademark rights – its business model is investment management and

advisory services offered to "institutional investors, high net worth investors, and broadly held mutual funds." (Dkt. 1, ¶¶ 7-9.) . The purported examples, of LC II's "prior rights" are not alleged to be from licensees of LC II, but from unnamed affiliates or affiliates of affiliates, whose investment, is not even alleged to have been conducted under a "Lyrical" mark. In any event, as a matter of law, even if true, one instance of investment and production of a film from more than twenty years ago, even if conducted by a bona fide licensee of LC II (which is not actually alleged), does not give LC II trademark rights in entertainment production and financing. Nor does the allegation of an unnamed affiliate's investment 20 years ago render LC II's rights as a licensor of the mark LYRICAL for investment management and advisory services "closely related to" media development and production services offered by Lyrical Media. *See Collins*, 497 F. Supp. 3d at 898 (quoting *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1092 (C.D. Cal. 2003)) ("The mere fact that two products or services fall within the same general field . . . does not mean that the two products or services are sufficiently similar to create a likelihood of confusion.").

The Complaint also alleges that LC II and Lyrical Media target the services "to the same types of consumers through the same or overlapping channels of trade." (Dkt. 1, ¶ 29.) Again, LC II's own allegations defeat this baseless assertion. LC II's licensees provide services to high net worth investors as well as institutional investors such as private equity, venture capital, and hedge funds. (*Id.* ¶¶ 8-9.) This class of consumer is categorically different from the class of consumer targeted by Lyrical Media who develops and produces films, television shows, podcasts, and graphic novels for the general public. Further, LC II and its affiliates target a highly sophisticated class of consumer: high net worth investors and institutional investors. These sophisticated consumers are likely to exercise a high degree of care in choosing an investment manager who invests "millions in companies and projects

spanning various sectors" (*id.* ¶ 11) and unlikely to be easily confused by Lyrical Media's use of the LYRICAL MEDIA mark used exclusively in the media and entertainment industry. *See M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1084 (9th Cir. 2005) (finding that the highly sophisticated purchasers "would be well informed about the nature of a database program and its producer before making a purchasing decision" and "the possibility that these members of the music industry would be confused . . . is almost nil").

In addition, Faegre Drinker failed to conduct a reasonable and competent inquiry before signing and filing these claims not grounded in fact or in law. Even a cursory review of the parties' prior dealings as well as their respective services, would have made it apparent to any counsel that LC II simply does not have a colorable claim for trademark infringement against Lyrical Media. At best, Faegre Drinker failed to conduct a reasonable and competent inquiry, but it is particularly egregious that Faegre Drinker knowingly prepared the Complaint setting forth such baseless claims as counsel for the negotiations between the parties, trademark counsel for the prosecution of LC II's later-filed trademark application, and counsel for the Petition for Partial Cancellation. Put differently, Faegre Drinker undoubtedly knew that LC II's claims lack merit but proceeded to sign and file the pleading. During the parties' negotiations concerning Lyrical Media's mark and services, Faegre Drinker unequivocally represented to Lyrical Media that LC II was only seeking deletion of the Class 36 services from the '817 Registration and that "the Class 41 and 42 identifications can remain as they are." (Rosenberg Decl. Ex. 1.) In making this representation, which it chose to omit from the Complaint, counsel made it clear, and Lyrical Media reasonably understood, that LC II was not concerned with Lyrical Media's use of its own LYRICAL MEDIA mark at all on its core services, and with respect to the registration, was only concerned with maintenance of Class 36 on the Trademark Register. It also confirms that counsel knew that LC II's

services and Lyrical Media's services were distinct and not related to raise any infringement concern from LC II's end. To be clear, the Complaint does not allege any facts that suggest Lyrical Media's services somehow changed in any way between July 2024—when Faegre Drinker stated "the Class 41 and 42 identifications can remain as they are"—and the filing of this action that could have impacted counsel's assessment of the claims. Alternatively, Faegre Drinker's counsel deliberately misled Lyrical Media, to obtain a consent that would lead to the acceptance and registration of LC II's LYRICAL mark, with the underlying and undisclosed intention of using the issued registration against Lyrical Media.

Faegre Drinker, despite knowing that the claims were not grounded in fact and in law and having previously admitted that its client had no concerns with respect to Lyrical Media's entertainment and production services signed and filed a pleading that materially misleads this Court either affirmatively or by omission. This is precisely the type of conduct Rule 11 is designed to prohibit, and sanctions against Faegre Drinker are warranted. *See Yarbrough v. San Bernardino County*, No. EDCV 24-0319-KK-DTBx, 2024 WL 2401843, at *1 (C.D. Cal. May 23, 2024) (issuing an order to show cause pursuant to Rule 11 where the plaintiff submitted a complaint containing false and misleading allegations made without a reasonable basis); *see also Lake v. Gates*, 130 F.4th 1064, 1070 (9th Cir. 2025) ("Ensuring that attorneys do not abuse the court process by filing misleading and false claims is a legitimate function of Rule 11.").

**B. LC II's Complaint Was Brought with An Improper Purpose.**

Frivolousness of the Complaint and the parties' dealings surrounding Lyrical Media's mark demonstrate that LC II and its counsel filed the Complaint for no other purpose but to harass Lyrical Media and impugn its integrity in the industry of which it has been a part for more than 4 years. As described above, Lyrical Media cooperated with LC II and agreed in good faith to delete the Class 36 services from

the ’817 Registration, rather than engaging in protracted litigation in the Trademark Office, relying on Faegre Drinker’s affirmative representation that the Class 41 and 42 services were of no concern to its client, LC II. LC II’s subsequent registration of its mark was only possible because of Lyrical Media’s aid and agreement to delete Class 36 from its own registration. The fact that LC II is bringing this frivolous Complaint against Lyrical Media after such events and after LC II obtaining the benefit of successful registration supports the inference that the Complaint was not filed to vindicate a legitimate dispute but for an improper purpose, namely, to harass Lyrical Media and impose unnecessary litigation costs. Lyrical Media is now to be bullied because it reasonably permitted a third party in a different industry to register a LYRICAL mark that was not confusing in its own industry. Faegre Drinker’s omission of any reference to its own representation during the parties’ prior dealings from the Complaint further supports the inference of improper purpose, because counsel’s express statements that Lyrical Media’s services were not a concern to its client would have directly contradicted the claims set forth in this frivolous Complaint.

Faegre Drinker, as counsel for LC II since the inception of the parties’ relationship in 2024, signed and filed the Complaint that presents a materially incomplete and misleading account, despite knowing that the claims would be frivolous. This conduct can only be interpreted as having an improper purpose in filing this action against Lyrical Media, and sanctions are warranted to deter such conduct in accordance with the spirit of Rule 11.

## IV. CONCLUSION

For the foregoing reasons, Defendant Lyrical Media LLC respectfully requests that the Court sanction Plaintiff Lyrical Corp. II, LLC and its counsel at Faegre Drinker Biddle & Reath LLP who signed the Complaint, including

reasonable attorneys' fees and expenses incurred in defending against LC II's frivolous claims and any other and further relief the Court may deem just and proper.

Date: July 10, 2026

*/s/ Erica J. Van Loon*
Erica J. Van Loon (#227712)
**ARMOND WILSON LLP**
2029 Century Park East, Ste 400N
Los Angeles, CA 90067
Telephone: (310) 882-6195
erica.vanloon@armondwilson.com

Jacqueline M. Lesser (admitted *pro hac vice*)
**ICE MILLER LLP**
1735 Markey Street, Suite 3900
Philadelphia, PA 19103
Telephone: (215) 982-5165
Jacqueline.Lesser@icemiller.com

Justin Swindells (admitted *pro hac vice*)
Jin Lee (#364574)
**ICE MILLER LLP**
200 West Madison Street, Suite 3500
Chicago, IL 60606
Telephone: (312) 726-7133
Justin.Swindells@icemiller.com
Jin.Lee@icemiller.com
*Attorneys for Defendant, Lyrical Media LLC.*