DAVID A. BELCHER (SBN 330166)
david.belcher@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: +1 310 203 4000
Facsimile: +1 310 229 1285

JAMES J. SAUL (*Pro Hac Vice*)
j.j.saul@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
320 S. Canal Street, Suite 3300
Chicago, Illinois 60606
Telephone: +1 312 569 1000
Facsimile: +1 312 569 3000

Attorneys for Plaintiff
LYRICAL CORP. II, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LYRICAL CORP. II, LLC,

Plaintiff,

v.

LYRICAL MEDIA LLC,

Defendant.

Case No. 2:26-cv-04949-SPG-SSC

**PLAINTIFF LYRICAL CORP. II, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11**

Date: August 12, 2026
Time: 1:30 p.m.
Judge: Hon. Sherilyn Peace Garnett
Crtrm: 5C

*[Declaration of James J. Saul filed concurrently herewith]*

## TABLE OF CONTENTS

**Page**


I. RELEVANT BACKGROUND ........ 6

A. Lyrical Corp. II. ........ 6

B. Lyrical's Prior Dispute with Lyrical Media ........ 7

C. Lyrical Media Expands its Use of LYRICAL Mark ........ 9

II. LEGAL STANDARD ........ 10

III. ARGUMENT ........ 11

A. Lyrical's Complaint Does Not Present Frivolous or Objectively Unreasonable Claims ........ 11

1. At a Minimum, the Complaint States a Plausible Claim for Trademark Infringement ........ 11

2. Lyrical Media Has Not Established that the Complaint is Objectively Baseless ........ 13

a. The Complaint Plausibly Alleges the Parties' Services are Related and the Allegations are Supported by a Reasonable Pre-Suit Investigation ........ 14

b. The Parties' Reached No Agreement Concerning Lyrical Media's Use of LYRICAL or LYRICAL MEDIA in Connection with Any Goods or Services ........ 16

c. The Complaint Plausibly Alleges Overlapping Trade Channels and Consumers ........ 19

B. Lyrical's Complaint Was Not Brought for an Improper Purpose ........ 19

C. Lyrical Media's Sanctions Motion Rests on Mischaracterizations and Omissions and Warrants an Award of Fees ........ 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ........ 12, 13

*Applied Information Sciences Corp. v. eBAY, Inc.*,
511 F.3d 966, 85 U.S.P.Q.2d 1527 (9th Cir. 2007) ........ 14

*Cal. Architectural Bldg. Prods. v. Franciscan Ceramics*,
818 F.2d 1466 (9th Cir. 1987) ........ 11

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384, 110 S.Ct. 2447, 110 L. Ed. 2d 359 (1990) ........ 11

*Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*,
448 F.3d 1118 (9th Cir.2006) ........ 11, 12

*Douglas v. TD Bank USA*,
No. 3:20-CV-00395-JR, 2021 WL 5861558 (D. Or. Aug. 11, 2021) ........ 14

*Hewlett-Packard Co. v. Packard Press, Inc.*,
281 F.3d 1261 (Fed. Cir. 2002) ........ 12, 13

*HMH Pub. Co., Inc. v. Brincat*,
504 F.2d 713, 183 U.S.P.Q. 141 (9th Cir. 1974) ........ 14

*Holgate v. Baldwin*,
425 F.3d 671 (9th Cir. 2005) ........ 10

*Mattel, Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) ........ 12

*Operating Engineers' Pension Trust v. A-C Co.*,
859 F.2d 1336 (9th Cir. 1988) ........ 10

*Oriental Financial Group, Inc. v. Cooperativa de Ahorro y Credito Oriental*,
698 F.3d 9, 105 U.S.P.Q.2d 1128 (1st Cir. 2012) ........ 18

*Patelco Credit Union v. Sahni*,
262 F.3d 897 (9th Cir. 2001) ........ 20

*Pom Wonderful LLC v. Hubbard*,
775 F.3d 1118 (9th Cir. 2014) .......... 13

*ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*,
314 F.3d 62, 65 U.S.P.Q.2d 1195 (2d Cir. 2002) .......... 18

*Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*,
893 F.2d 1109 (9th Cir. 1990) .......... 10

*Sara Lee Corp. v. Kayser-Roth Corp.*,
81 F.3d 455, 38 U.S.P.Q.2d 1449 (4th Cir. 1996) .......... 18

*Townsend v. Holman Consulting Corp.*,
929 F.2d 1358 (9th Cir. 1990) .......... 19

*Trader Joe's Co. v. Trader Joe's United*,
150 F.4th 1040 (9th Cir. 2025) .......... 13

*Ustian v. Ustian*,
No. 2:22-CV-08845-SPG-MAA, 2025 WL 2374819 (C.D. Cal. July 22, 2025) .......... 14

**Statutes, Rules & Regulations**

15 U.S.C. § 1114 .......... 11

Fed. R. Civ. P. 11 Notes of Advisory Committee on Rules (1993) .......... *passim*

Fed. R. Evid. 408 .......... 17, 21

Defendant Lyrical Media LLC's ("Defendant") Motion for Sanctions is an abuse of Rule 11 that is itself sanctionable. The Motion omits critical facts, brazenly misquotes and misstates the allegations in the Complaint and prior communications between the parties, and casts aspersions on the undersigned counsel that have no basis in fact, all while violating Rule 11's express prohibition on using a threat of sanctions "to test the legal sufficiency or efficacy of allegations in the pleadings," "emphasize the merits of a party's position," or "to intimidate an adversary into withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11 Notes of Advisory Committee on Rules (1993). Lyrical Media's Motion should be denied.

To be clear, there is nothing frivolous or improper about Plaintiff Lyrical Corp. II, LLC's ("Lyrical") Complaint. The Complaint alleges that Lyrical owns prior rights in the LYRICAL trademark in connection with investment management and advisory services, that Lyrical Media is using the highly similar marks LYRICAL MEDIA, LYRICAL GAMES, and LYRICAL ANIMATION (and, on some occasions, a standalone LYRICAL mark) in connection with "investment services," as well as related production and development services, and that use of a nearly identical trademark in connection with such services is likely to cause consumer confusion. The factual allegations in the Complaint concerning use of an identical or nearly identical mark on both identical and related services are more than sufficient to state an objectively reasonable claim for trademark infringement, particularly considering the intensely factual nature of such disputes.

Nonetheless, Lyrical Media argues that the trademark infringement claims asserted in the Complaint concerning Lyrical Media's production and development services are frivolous, and therefore sanctionable, because such services are not related and Lyrical's allegations of relatedness are allegedly contrary to prior representations made by Lyrical's counsel. (*See generally*, Def.'s Memo. (Dkt. 29-1) at 6-11.) Lyrical Media's attempt to adjudicate a merits dispute through a motion for sanctions is an improper use of Rule 11, and the Motion should be denied on that

basis alone. But Lyrical Media's argument also rests on an incomplete factual record, distorts the parties' long negotiation history, and ignores the Complaint's allegations concerning Lyrical Media's subsequent expansion of its LYRICAL-formative branding before Lyrical filed suit. Contrary to the picture painted in the Motion, Lyrical never represented that it was "unconcerned" with Lyrical Media's Class 41 and 42 services, repeatedly objected to Lyrical Media's use of LYRICAL MEDIA in connection with Class 36 services, and consistently reserved all rights and remedies in its correspondence with Lyrical Media's counsel. The parties never reached a comprehensive settlement agreement, release, covenant not to sue, or coexistence agreement despite years-long efforts. At most, the parties reached a narrow, informal procedural resolution of the TTAB cancellation proceeding that both parties understood did not address Lyrical's objections to Lyrical Media's marketplace use. And then, Lyrical Media subsequently ***expanded its use*** of the LYRICAL Mark, including using a standalone LYRICAL Mark to promote its services and launching two new LYRICAL-formative entities. Lyrical conducted a reasonable pre-suit investigation, and the allegations in the Complaint concerning the relatedness of the parties' services are supported by publicly available materials broadly describing Lyrical Media's ventures across financing, investment, and production and development services. Nothing in the parties' negotiation history renders the allegations in the Complaint concerning trademark infringement objectively unreasonable, and the Court should deny the Motion.

## I. RELEVANT BACKGROUND

### A. Lyrical Corp. II.

Lyrical licenses the LYRICAL mark for use in connection with investment services. (Compl. ¶ 7.) Through its authorized licensees, Lyrical has used the LYRICAL trademark in connection with investment services since at least as early as January 31, 2004, and has backed and grown companies in many and various sectors, including financial, healthcare, technology, environmental, and consumer.

(*Id*. ¶¶ 7-10.) Lyrical, through its licensees, has also invested millions over the years in companies and projects in the media and entertainment industry. (*Id*. ¶ 11.)

**B. Lyrical's Prior Dispute with Lyrical Media**

On December 8, 2021, Lyrical Media filed App. Ser. No. 97/161,720 – LYRICAL MEDIA covering *Project financing for developing and producing film, television, video game, podcast and graphic novel content; investment services, namely, asset acquisition, consultation, development and management services* in Class 036, *Creating and developing concepts for television programs; production of podcasts; film production*; *Production of video game software; publication of graphic novels* in Class 041, and *Video game development services* in Class 042. App. Ser. No. 97/161,720 matured to Reg. No. 7,170,817 on September 19, 2023. (Compl. ¶ 17.)

Following the inadvertent lapse of its original registration, on March 2, 2022, Lyrical filed a new application to register LYRICAL in the United States Patent and Trademark Office ("PTO") in connection with *investment management services; investment advisory services* in Class 36. (Decl. of James. J. Saul in Support of Opposition ("Saul Decl.") ¶¶ 2-3; ECF 29-3 at 12-21.) After the PTO denied Lyrical's application based on a likelihood of confusion with Lyrical Media's Class 36 services (ECF 29-3 at 30-35), Lyrical's counsel, J. J. Saul ("Saul"), emailed Lyrical Media's trademark counsel, Jody Drake ("Drake"), on July 25, 2024, requesting that Lyrical Media remove the Class 36 services from its registration, offering to allow Lyrical Media to maintain the registration with respect to Class 41 and 42 services, and reserving all rights. (ECF 29-2 at 15.) At the time, based on the information then available to it, Lyrical was primarily concerned with Lyrical Media's use and registration of a LYRICAL-formative mark in connection with Class 36 services, which included identical "investment services." On August 23, 2024, Lyrical filed a Petition to Cancel in the United States Trademark Trial and Appeal Board ("TTAB") seeking to cancel Lyrical Media's registration for LYRICAL

MEDIA in connection with the Class 36 financial services. (Compl. ¶ 19; *see also* Saul Decl., Ex. A.)

Shortly thereafter, on September 27, 2024, Lyrical sent a formal cease-and-desist letter to Drake advising Lyrical Media of its prior rights to the LYRICAL Mark and demanding that Lyrical Media abandon the Class 036 services in its registration ***and immediately cease and desist from using*** the LYRICAL MEDIA trademark in connection with competing project financing services, investment services, and related goods and services. (Compl. ¶ 20; Saul Decl. Ex. B.) On October 14, 2024, Drake responded to the cease-and-desist letter via email agreeing to delete the Class 36 services and proposing a call to discuss "the other issues raised in your letter." (Saul Decl. Ex. C.) On the call, counsel discussed Lyrical Media's use and registration of the LYRICAL MEDIA mark, and Drake conceded there was some risk of marketplace confusion. (Saul Decl. ¶ 6.) The parties further agreed to resolve the cancellation proceeding and discuss the larger issue of Lyrical Media's use of the LYRICAL MEDIA mark at a later date. (*Id.*)

On October 28, 2024, without having reached an agreement concerning the broader use issue, Lyrical Media's counsel provided a draft joint motion to amend the services in Lyrical Media's registration and dismiss the cancellation ("Joint Motion"). (Saul Decl. Ex. D.) Saul provided edits on October 31, 2024, revising the Joint Motion such that (1) judgment would be entered against Lyrical Media on the Class 36 services; and (2) the cancellation would be dismissed without prejudice. (Saul Decl. Ex. E.) Lyrical Media's counsel accepted these changes and filed the Joint Motion on December 30, 2024. (*Id*. Ex. F.)

On May 14, 2025, Saul emailed Drake to "revisit the demands set forth in our attached letter of September 27, 2024" and requested that Drake confirm that Lyrical Media would (1) cease all use of LYRICAL MEDIA for Class 36 services; (2) destroy corresponding marketing materials; and (3) refrain from challenging Lyrical's use of its LYRICAL Mark. (*Id*. Ex. G.) Lyrical offered to forego pursuing

damages or an accounting in exchange for prompt compliance. Between June 16 and October 14, 2025, Saul sent Drake four follow-up emails, to which no substantive response was given. (*Id.*) Drake finally provided a substantive response on October 31, 2025, refusing all of Lyrical's demands. (*Id.*)

**C. Lyrical Media Expands its Use of LYRICAL Mark**

After receiving Drake's response, and prior to filing its Complaint, Lyrical conducted a reasonable, pre-suit investigation and discovered that, despite knowing that Lyrical objected to its use and registration of LYRICAL MEDIA in connection with financial services, Lyrical Media decided to ***expand*** its use of LYRICAL following conclusion of the cancellation proceedings. Not only did Lyrical Media use the standalone LYRICAL Mark in connection with marketing and advertising its services, including on both its website, lyricalmedia.com, and Instagram page (Compl. ¶ 23; *see also* Saul Decl. Ex. H),[1] but it launched two new entities under the LYRICAL umbrella – LYRICAL ANIMATION and LYRICAL GAMES. (Compl. ¶ 24; Saul Decl. Ex. I (application to register LYRICAL GAMES, filed August 14, 2025); Ex. J (announcing launch of LYRICAL ANIMATION on November 17, 2025).)

Numerous public sources described the interrelatedness of these entities and the financing, development, and production services they provided. As set forth in the Complaint, Lyrical Media holds itself out as a "startup, cross-platform ***media financier and production company*** operating across film, television, interactive, podcasts, and graphic novels." (Compl. ¶ 16.) Public reporting confirmed that Lyrical's "financing workflow" extended across "film, television, video games, animation, graphic novels and venture investing," and described Lyrical Games as a "privately funded indie games publisher" that had already signed three titles and had

[1] Notably, after receiving a follow-up demand letter from Lyrical, Lyrical Media removed some, but not all, standalone uses of LYRICAL from its materials. (*Compare* Saul Decl. Ex. H (reflecting change from LYRICAL to LYRICAL MEDIA on portion of website) *with* Compl. ¶ 23 (reflecting continued use of LYRICAL).)

received "many millions of dollars in investment" from Lyrical Media. (Saul Decl. Exs. K-L.) This expanded use of the LYRICAL mark by Lyrical Media exacerbated the risk of consumer confusion and made clear that Lyrical Media intended to use LYRICAL as an umbrella brand for a host of entities providing a broad array of goods and services.

Based on these new developments, Lyrical sent another cease-and-desist letter to Lyrical Media, objecting to Lyrical Media's use of LYRICAL, LYRICAL MEDIA, LYRICAL GAMES, and LYRICAL ANIMATION in connection with all goods and services and attaching a draft federal trademark infringement complaint. (*See* ECF 29-2 at 74-101.) Nonetheless, Lyrical offered "one last discussion in the hopes of arriving at a mutually agreeable resolution to this dispute." (*Id*. at 76.)

On April 3, 2026, counsel for Lyrical and counsel for Lyrical Media had a brief call to discuss the March 23 letter, and Lyrical Media's counsel expressed that a full response to the letter would be forthcoming. (Saul Decl. Ex. M.) As of May 7, 2026, Lyrical Media had not provided a substantive response, and Lyrical proceeded with filing this action.

## II. LEGAL STANDARD

Rule 11 is reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers' Pension Trust v. A-C Co*., 859 F.2d 1336, 1344 (9th Cir. 1988) (reversing district court's award of sanctions). To determine if a complaint is frivolous, the court must assess (1) whether the complaint is legally and factually baseless from an objective perspective and (2) whether the attorney conducted a reasonable and competent inquiry prior to signing and filing the complaint. *Holgate v. Baldwin*, 425 F.3d 671, 675–76 (9th Cir. 2005). Critically, "[a]n objective standard of reasonableness applies to determinations of frivolousness" and the key question "is whether a complaint states an arguable claim – not whether the pleader is correct in his perception of the law." *Riverhead Sav.*

*Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1115 (9th Cir. 1990) (reversing district court's award of sanctions). Objective reasonableness is not a high bar, and where there is some plausible basis for a claim, even a weak one, the claim is not baseless. See *Cal. Architectural Bldg. Prods. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1987) (reversing award of sanctions where, although evidence was weak and could not survive summary judgment, court could not "say that the complaint [was] so lacking in plausibility as to ... subject [the attorney] to" Rule 11 sanctions).

In determining whether Rule 11 sanctions should be imposed, the court does not judge the merits of the action, but rather, determines whether an attorney has abused the judicial process. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L. Ed. 2d 359 (1990). Rule 11 should not be used to test the legal sufficiency of a party's claims. Fed. R. Civ. P. 11 Notes of Advisory Committee on Rules (1993) ("[Rule 11 motions] should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.").

## III. ARGUMENT

### A. Lyrical's Complaint Does Not Present Frivolous or Objectively Unreasonable Claims

#### 1. *At a Minimum, the Complaint States a Plausible Claim for Trademark Infringement*

At a minimum, Lyrical's Complaint states a plausible claim for trademark infringement based on factual allegations that have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation. To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party "must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). To assess confusion, the Ninth Circuit considers the eight factors set forth

in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) *abrogation in part on other grounds recognized by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003) ("*Sleekcraft* factors"): (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

Here, Lyrical's Complaint plausibly alleges both ownership and likelihood of confusion. Specifically, the Complaint alleges that Lyrical owns prior rights in the LYRICAL trademark in connection with investment management and advisory services, and that such rights date back to at least as early as 2004. (Compl. ¶¶ 7-11.) The Complaint further alleges ownership of a federal trademark registration (Compl. ¶ 13), which is prima facie evidence of Lyrical's rights in the LYRICAL trademark. *Dep't of Parks & Recreation*, 448 F.3d at 1124.

As to confusion, Lyrical alleges that Lyrical Media is using the highly similar marks LYRICAL MEDIA, LYRICAL GAMES, and LYRICAL ANIMATION (and, on some occasions, an identical standalone LYRICAL mark) in connection with financial services, which Lyrical Media has itself broadly described as "investment services," and production and development services. (Compl. ¶¶ 22-28.) Lyrical Media's financial services are closely related, if not identical to, the investment services offered by Lyrical (Compl. ¶ 27), and Lyrical Media's production and development services are related to the investment services offered by Lyrical, as evidenced by the fact that Lyrical Media itself offers both investment services and production and development services. *See, e.g.*, *Hewlett-Packard Co. v. Packard Press, Inc*., 281 F.3d 1261, 1267 (Fed. Cir. 2002) (evidence that "a single company sells the goods and services of both parties, if presented, is relevant to a relatedness analysis"). And because the parties' financial services are closely related, if not identical, Lyrical reasonably alleged, upon information and belief, that these services

are offered to the same types of consumers and travel through the same channels of trade. (Compl. ¶ 29); *see also Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014) (quoting *Sleekcraft*, 599 F.2d at 353) ("Marketing channels can converge even when different submarkets are involved so long as 'the general class of ... purchasers exposed to the products overlap.'"); *Hewlett-Packard Co.*, 281 F.3d at 1268 ("[A]bsent restrictions in the application and registration, goods and services are presumed to travel in the same channels of trade to the same class of purchasers."). These factual allegations are more than sufficient to reasonably allege likelihood of confusion under the *Sleekcraft* factors, particularly considering the intensely factual nature of such disputes. *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1049 (9th Cir. 2025) (noting dismissal of trademark infringement claims at the pleading stage is generally disfavored given the factual nature of such claims).

2. *Lyrical Media Has Not Established that the Complaint is Objectively Baseless*

Lyrical Media does not appear to take issue with Lyrical's Complaint to the extent it alleges infringement with respect to the Class 36 financial and investment services offered by Lyrical Media. Instead, it focuses exclusively on Lyrical Media's Class 41 and 42 production and development services and argues that the Complaint is not grounded in fact or law because the parties' services are not related and are not offered to the same consumers or through the same channels of trade. (Def.'s Memo. at 6-11.) Specifically, Lyrical Media alleges that Lyrical (through counsel) previously represented it was "unconcerned" with Lyrical Media's Class 41 and 42 services but now alleges that those services are "closely related, if not identical" to the services offered by Lyrical. (Def.'s Memo. at 6-7.) This argument misconstrues both the Complaint and the parties' prior correspondence, rests on a misunderstanding of trademark law, and, even more fundamentally, is a merits argument that is not appropriate fodder for a Rule 11 motion.

a. *The Complaint Plausibly Alleges the Parties' Services are Related and the Allegations are Supported by a Reasonable Pre-Suit Investigation*

Contrary to how Lyrical Media characterizes the allegations, the Complaint alleges that the Class 36 ***financial services*** offered by Lyrical Media are closely related, if not identical to, Lyrical's services, and that the production and development services are related, as evidenced by the fact that Lyrical Media offers all three services. (Compl. ¶¶ 27-28.) Thus, to the extent Lyrical Media's motion is based on the "frivolous" allegation that Lyrical's investment services and Lyrical Media's production and development services are "closely related, if not identical," no such allegation is made in the Complaint.

More broadly, there is sufficient support for Lyrical's allegation that the services are, at minimum, related. Infringement may be found even where the senior user does not offer identical, or even directly competitive, services. *See, e.g.*, *HMH Pub. Co., Inc. v. Brincat*, 504 F.2d 713, 716, 183 U.S.P.Q. 141 (9th Cir. 1974) ("an infringement could be found and prohibited under federal law even though goods of different descriptive properties were involved and though, in consequence, the parties were not in direct competition."); *Applied Information Sciences Corp. v. eBAY, Inc.*, 511 F.3d 966, 972, 85 U.S.P.Q.2d 1527 (9th Cir. 2007) ("Having established a protectable interest by proving it is the owner of a registered trademark, the owner does not additionally have to show that the defendant's allegedly confusing use involves the same goods or services listed in the registration."). Thus, contrary to Lyrical Media's arguments, the fact that the parties do not offer identical services does not render the Complaint objectively baseless. And in any case, relatedness of services is an issue for the factfinder to decide after the record is developed; it is not appropriate for a Rule 11 motion. *Ustian v. Ustian*, No. 2:22-CV-08845-SPG-MAA, 2025 WL 2374819, at *4 (C.D. Cal. July 22, 2025) ("[A] sanctions motion is not the proper procedural vehicle to assess the merits of the pleadings."); *Douglas v. TD Bank USA*, No. 3:20-CV-00395-JR, 2021 WL 5861558, at *3 (D. Or. Aug. 11, 2021)

("Defendants seemingly contend that Rule 11 sanctions are appropriate because plaintiff's TCPA claim fails on the merits. The Court should reject this contention."). Tellingly, Lyrical Media does not cite a single case in which a Court resolved a factual dispute concerning the relatedness of services on a Rule 11 Motion, and Lyrical is aware of none.

The Motion's attempt to convert that factual dispute into a sanctions issue also depends on a materially incomplete account of the Complaint. Lyrical Media's assertion that "the Complaint does not allege any facts that suggest Lyrical Media's services somehow changed in any way between July 2024" and the filing of this action ignores the Complaint's actual allegations. (Def.'s Memo. at 11.) The Complaint alleges that Lyrical Media continued to provide project financing and investment services after the Class 36 deletion, used the standalone LYRICAL mark in marketing and advertising its services, and expanded its use of LYRICAL-formative branding to include LYRICAL GAMES and LYRICAL ANIMATION after receiving Lyrical's objection. (Compl. ¶¶ 21-24.) The Complaint further alleges that Lyrical Media's development and production services are closely related to and intertwined with its financial services, and that the services are targeted to overlapping consumers and channels of trade. (Compl. ¶¶ 26-28.) Lyrical Media can dispute those allegations, but it cannot pretend they do not exist and then demand sanctions.

Nor was Lyrical relying on speculation when it alleged relatedness between Lyrical's investment services, on the one hand, and Lyrical Media's financing, investment, production and development services. Lyrical Media is a self-described "media financier and production company" operating across film, television, interactive, podcasts, and graphic novels. (Compl. ¶ 16.) Public reporting confirms Lyrical's financing workflow spans film, television, video games, animation, graphic novels, and venture investing. (Saul Decl. ¶ 15; Ex. L.) And public reporting likewise describes Lyrical Games as a privately funded game publisher with

significant private funding and substantial investment from Lyrical Media. (*Id.*) Those facts provided an objectively reasonable basis to allege that Lyrical Media's Class 41 and 42 services were related to and intertwined with the financial services offered under the same LYRICAL-formative branding.

b. *The Parties' Reached No Agreement Concerning Lyrical Media's Use of LYRICAL or LYRICAL MEDIA in Connection with Any Goods or Services*

Setting aside the issue of relatedness generally, Lyrical Media's core grievance appears to be that Lyrical allegedly "changed tack" concerning the production and development services after it obtained its registration despite previously representing that it was "unconcerned" with such services in a July 2024 email correspondence. (Def.'s Memo. at 4.) This is an egregious mischaracterization of the parties' prior correspondence. Lyrical never represented that it "was unconcerned" with Lyrical Media's Class 41 and 42 services; instead, in connection with its attempt to settle a potential cancellation proceeding, Lyrical offered that Lyrical Media's "Class 41 and 42 identifications can remain as they are" if Lyrical Media agreed to delete the Class 36 services, while expressly reserving all rights and remedies. (*See* Dkt. 29-2 at 15.) This offer was followed by correspondence from Lyrical's counsel expressly objecting to Lyrical Media's ***use*** of Lyrical in connection with Class 36 services, which made clear that any settlement of the dispute would require cessation of such use. Notwithstanding notice of Lyrical's objection to both use and registration, Lyrical Media opted to delete the Class 36 services from its registration to resolve the cancellation proceeding without reaching a formal settlement with Lyrical. (*See* Saul Decl. Exs. B-F.)

Though it never expressly argues that the July 2024 email has any preclusive or contractual effect on this proceeding as a matter of law, Lyrical Media's Motion nonetheless treats the email as though it were a binding, global assurance that Lyrical would never challenge Lyrical Media's use or registration of LYRICAL MEDIA in connection with Class 41 and 42 services. Tellingly, Lyrical Media cites no authority

to support its suggestion that a single settlement communication from Lyrical's counsel is sufficient to render this action so objectively baseless as to warrant Rule 11 sanctions. Nor could it. Lyrical Media identifies no release, covenant not to sue, coexistence agreement, or contractual provision reflecting such broad agreement. Surely, if Lyrical Media believed the parties had reached a comprehensive settlement, one would expect some written agreement reflecting that bargain — particularly where the very email Lyrical Media invokes expressly reserved all rights and remedies. The only documented resolution was a narrow procedural resolution of the Class 36 registration dispute, which was followed by Lyrical's repeated efforts to obtain assurances that Lyrical Media would cease use of the LYRICAL Mark at least in connection with Class 36 services.

Nor can Lyrical Media use one sentence from a preliminary settlement communication expressly sent pursuant to Federal Rule of Evidence 408 as a sword while ignoring the rest of the negotiation history, including Lyrical's subsequent written demand that any resolution include cessation of use for Class 36 services, the parties' oral discussion of unresolved issues, and Lyrical's repeated follow-ups seeking assurances that Lyrical Media ultimately refused to provide. Viewed in that context, the July 2024 email was not a release, waiver, or permanent consent to Lyrical Media's ongoing or expanded use of LYRICAL-formative marks. To the extent Lyrical Media believes the email shows otherwise, that belief at most creates a disputed merits issue; it does not transform Lyrical's Complaint into an objectively baseless pleading.

Moreover, Lyrical's assessment, based on the information available to it at the time, that the Class 36 services were its primary concern does not render its Complaint frivolous or establish that the Class 41 and 42 services are unrelated as a matter of law. Nor is it relevant in view of subsequent developments, including Lyrical Media's expansion into two new LYRICAL-branded entities and its use of the standalone LYRICAL mark, all of which provide an objectively reasonable basis

for the allegations in the Complaint. Lyrical is well within its rights to sue now, even if it previously concluded that an infringement suit (or cancellation proceeding) against Lyrical Media's Class 41 and 42 services was not worth the effort and expense. *See, e.g.*, *Oriental Financial Group, Inc. v. Cooperativa de Ahorro y Credito Oriental*, 698 F.3d 9, 23 (1st Cir. 2012) (Trademark owner need not file suit against activity that "even if actionable, was so small in scope that a reasonable trademark owner could conclude that an infringement suit was not worth the costs of bringing suit."). In fact, it is black letter law that Lyrical is not required to sue for infringement until the threat of infringement "looms large," as it now does as a result of Lyrical Media's use of the standalone LYRICAL mark to promote its services, launch of multiple LYRICAL-formative entities, and refusal to cease use of LYRICAL in connection with at least Class 36 services, presumably because such services are too closely intertwined with its production and development services. *ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*, 314 F.3d 62, 68–70 (2d Cir. 2002) (Trademark owner "'has no obligation to sue until the likelihood of confusion looms large' and his 'right to protection [has] clearly ripened.'"); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996) (same). These developments constitute a marked change of circumstances from July 2024 and adequately support Lyrical's claim for trademark infringement. And while Lyrical Media accuses Lyrical's counsel of deliberately omitting the July 2024 correspondence from the Complaint, Lyrical expressly alleged that the prior cancellation action was limited to Lyrical Media's Class 36 services. (Compl. ¶¶ 19-21.) Lyrical has never tried to hide the parties' history because it does not undermine the validity of its current claims.

c. *The Complaint Plausibly Alleges Overlapping Trade Channels and Consumers*

Finally, Lyrical Media argues that the parties do not target their services to the same types of consumers through overlapping channels of trade because Lyrical provides services "to high net worth investors as well as institutional investors such as private equity, venture capital, and hedge funds" and such consumers are sophisticated consumers that are not likely to be confused. (Def.'s Memo. at 9-10.) These, again, are factual issues not appropriate for resolution on a Rule 11 motion. But tellingly, Lyrical Media does not put in any evidence concerning the types of consumers it targets and argues only that Lyrical's consumers "are categorically different from the class of consumer targeted by Lyrical Media." (*Id*. at 9.) Lyrical Media's unsupported assertions that the parties do not target the same consumers through overlapping channels of trade does not render the Complaint objectively unreasonable.

**B. <u>Lyrical's Complaint Was Not Brought for an Improper Purpose</u>**

In the context of complaints which initiate actions, "the improper purpose" inquiry is subsumed into the "frivolousness" inquiry, such that a non-frivolous complaint is not subject to Rule 11 sanctions even when the motives for asserting those claims are not entirely pure. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). Because the Complaint is not frivolous for the reasons discussed above, it is not improper, and Lyrical's motives for bringing the Complaint are irrelevant. However, Lyrical vigorously disputes Lyrical Media's suggestion that the Complaint was brought in bad faith.

Lyrical Media's improper-purpose narrative ignores years-long negotiations between the parties, as well as Lyrical's repeated objections to Lyrical Media's use and registration in connection with Class 36 services. As set forth above, Lyrical did not sue immediately after its registration was issued. Instead, it repeatedly followed up with Lyrical Media and sought assurances regarding use of LYRICAL MEDIA in

connection with Class 36 services. Only after repeated delays did Lyrical Media finally provide a substantive response rejecting Lyrical's demands, at which point Lyrical performed a pre-suit investigation that revealed Lyrical Media's expanded use of the LYRICAL mark and reasonable factual support for the allegations alleged in the Complaint. And even then, Lyrical made one last attempt to resolve the matter with Lyrical Media's trademark counsel, but counsel failed to provide a timely, substantive response.

Lyrical's broader enforcement position followed Lyrical Media's refusal to provide assurances and a reasonable pre-suit investigation that revealed public information showing LYRICAL-formative branding used in connection with an integrated mix of financing, private funding, venture investment, publishing, production support, and development services. Lyrical Media's wildly speculative suggestion that Lyrical filed the Complaint "to harass Lyrical Media and impose unnecessary litigation costs" is both insulting and contradicted by the factual record. The sequence of events supports good-faith enforcement, not harassment.

### C. Lyrical Media's Sanctions Motion Rests on Mischaracterizations and Omissions and Warrants an Award of Fees

It is well settled that "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001). Here, Lyrical Media's Motion rests on repeated mischaracterizations of both the Complaint and the parties' negotiations. Specifically, Lyrical Media argues that the Complaint "does not allege any facts" suggesting Lyrical Media's "services somehow changed in any way" after July 2024, but the Complaint expressly alleges continued and expanded use of LYRICAL MEDIA in connection with project financing and investment services, use of a standalone LYRICAL mark, and expanded LYRICAL-formative branding through LYRICAL GAMES and LYRICAL ANIMATION. Lyrical Media also misquotes the Complaint, claiming the Complaint alleges that Lyrical Media's production and

development services are "closely related, if not identical" to Lyrical's services when the Complaint contains no such allegations, and no fair reading of the Complaint could support this characterization. (Compl. ¶ 28 "The development and production services offered under the Infringing Marks are related to the services offered by Lyrical under its LYRICAL Mark.") And, more egregiously, Lyrical Media brazenly mischaracterizes the parties' prior correspondence as containing an affirmative representation that Lyrical was "unconcerned" with Lyrical Media's Class 41 and 42 services when no such representation was made. It then uses that mischaracterization to recast a preliminary Fed. R. Evid. 408 settlement overture — expressly reserving all rights and remedies — as a permanent representation that Lyrical would never challenge Lyrical Media's Class 41 and 42 use, notwithstanding the lack of settlement agreement, release, covenant not to sue, or coexistence agreement resolving Lyrical Media's ongoing marketplace use. These omissions and distortions confirm that the Motion is not a proper Rule 11 motion, but an attempt to litigate disputed merits and affirmative-defense issues under the guise of sanctions or otherwise intimidate Lyrical into withdrawing contentions that are, at a minimum, properly debatable. Lyrical will therefore move the Court for an award of reasonable expenses, including attorneys' fees incurred in opposing the Motion after the Motion is adjudicated.

Dated: July 22, 2026

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ David A. Belcher*
James J. Saul (*Pro Hac Vice*)
David A. Belcher

Attorneys for Plaintiff
LYRICAL CORP. II, LLC

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiff Lyrical Corp. II, LLC, certifies that this brief contains 5,346 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 22, 2026

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: *\/s/ David A. Belcher*
David A. Belcher